17-3829-cv
Board-Tech Electronic Co. v. Eaton Corp.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of June, two thousand eighteen.

PRESENT: DENNIS JACOBS,
         DENNY CHIN,
         RAYMOND J. LOHIER, JR.,
                   Circuit Judges.


- - - - - - - - - - - - - - - - - - - -X

Board-Tech Electronic Co., Ltd.,
         Plaintiff-Appellant,

         -v.-                                17-3829-cv

Eaton Corporation, Cooper Wiring
Devices, Inc.,
         Defendants-Appellees,

Eaton Electric Holdings LLC, Cooper
Lighting LLC,
         Defendants.

- - - - - - - - - - - - - - - - - - - -X


FOR PLAINTIFF-APPELLANT:        R. Alexander Pilmer
                                (Allison Ozurovich, on the
                                brief), Kirkland & Ellis

LLP, New York, NY & Los Angeles, CA.

**FOR DEFENDANTS-APPELLEES:**    Serrin Turner (James E. Brandt, Jooyoung Yeu, Matthew Valenti, on the brief), Latham & Watkins LLP, New York, NY.

Appeal from the judgment of the United States District Court for the Southern District of New York (Forrest, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that that the judgment of the district court is **AFFIRMED**.

Board-Tech Electronic Co., Ltd. ("Board-Tech") appeals the judgment of the United States District Court for the Southern District of New York dismissing its Second Amended Complaint (the "Complaint") against Eaton Corporation and Cooper Wiring Devices, Inc. (collectively "Eaton"), alleging violations of the Lanham Act for false advertising in connection with the compliance of certain of Defendants' light switch products with common industry safety standards and violations of state law. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Board-Tech and Eaton are competing manufacturers of decorative light switches. To be commercially viable, light switches in the United States must undergo certification by Underwriters Laboratories, Inc. ("UL"), an independent entity that tests, verifies, and endorses the safety of various electronic products. UL owns and has the exclusive power to license the "UL 20" certification mark to products that meet safety standards contained in a booklet known as the "UL Standard for Safety for General-Use Snap Switches." Manufacturers seeking the UL imprimatur must submit "representative samples" of their product to UL, whose engineers test the product against the applicable standard. If the samples pass, UL authorizes the manufacturer to advertise and label its products as "UL

20" compliant.  Eaton is a manufacturer that markets its decorator light switches as UL 20 compliant.

Board-Tech alleges that its in-house engineers independently tested UL 20 compliance of eight sets of six light switches drawn from Eaton's 7500, 7600, and 7700 series, and that each of the 48 light switch units failed. It asserts that the defendants' use of the UL 20 mark for those product series in advertisements and labeling is therefore false and misleading.  It is undisputed that Eaton has authorization from UL to use "UL 20," and that Board-Tech did not refer its own test results to UL, the mark owner.  And there is no allegation that UL itself has taken any action to retest, decertify, or change the classification of any of the challenged light switches.

Board-Tech claims false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and under various parallel state laws, as well as unjust enrichment.  The district court dismissed the Complaint on the grounds that it failed to comply with Rule 8(a) pleading standards, and in any event did not state a claim upon which relief can be granted. "We review _de novo_ a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all inferences in the plaintiff's favor."  Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013).  To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

## I.   False Advertising

"First (and obviously), a plaintiff bringing a false advertising claim" under Section 1125(a) "must show falsity."  Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 63 (2d Cir. 2016); see also S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001) (to establish a claim for false advertising under the Lanham Act, a plaintiff must first allege that the defendant has made a false or misleading statement); 15 U.S.C. § 1125(a)(1)(B).

3

Falsity can be established in two different ways. See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH, 843 F.3d 48, 65 (2d Cir. 2016). A plaintiff can demonstrate that the challenged advertisement is literally false by showing that it is "false on its face," Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2006), or that the advertisement's "words or images, considered in context, necessarily imply a false message," id. at 158. If an advertising message is literally false, "consumer deception is presumed, and the court may grant relief without reference to the advertisement's [actual] impact on the buying public." Id. at 153 (internal quotation marks omitted). Alternatively, "a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." Id.; see also Church & Dwight Co., 843 F.3d at 65 (falsity may be demonstrated "if the message leaves an impression on the listener or viewer that conflicts with reality" (citation and internal quotation marks omitted)).

The single statement alleged to be false is the text "UL 20" on Eaton's product labels and advertisements. Board-Tech argues primarily that this statement is literally false because the Eaton decorator switches did not comply with the UL 20 safety standards as advertised and (in the alternative) that even if the labels are technically accurate, the statement of UL 20 certification is likely to mislead consumers into believing the switches are safe.

### A. Literal Falsity

Accepting the allegations in the Complaint as true, four dozen select 7500, 7600, and 7700 series light switches did not pass a test that approximated or replicated the UL 20 certification process. We conclude that even assuming the complaint had identified the challenged light switches with the requisite particularity under Rule 8, these allegations are insufficient to establish literal falsity.

The UL 20 mark on a product's label or advertisement signifies only that the product has been (and continues to be) certified by UL. Board-Tech concedes that Eaton has

4

permission to display the mark.  And the Complaint does not allege that UL has since found that the light switches are no longer compliant, or that the products have materially changed since UL's last battery of tests.  The representation that Eaton's light switches are UL-approved is not "false on its face."  Time Warner, 497 F.3d at 153.

Board-Tech argues the use of the UL 20 mark may still be literally false "by necessary implication" because UL 20 certification necessarily implies that the product purchased will hold up to the UL 20 standard.  Chobani, LLC v. Dannon Co., 157 F. Supp. 3d 190, 199-200 (N.D.N.Y. 2016) (citing Pamlab, LLC v. Macoven Pharms., LLC, 881 F. Supp. 2d 470, 476 (S.D.N.Y. 2012)); see also Time Warner, 497 F.3d at 153-54.  The use of the UL 20 mark on Eaton's products represents that a sampling of those products complied with UL standards when UL tested the products.  It does *not* represent that every single unit will perform the same way when tested by different entities.[1]  To satisfy literal falsity under a theory of necessary implication, Board-Tech needs to allege sufficient facts to show that *Underwriters Laboratories* considers Eaton's products non-compliant--not just that someone else does.  A third party could have found that several dozen light switches failed a test modeled after the UL certification process without invalidating the approval to use the mark, or making it untrue that some other representative sampling of identical units met UL's requirements.  In other words, Board-Tech's testing, absent additional indicia of non-compliance, does not render Eaton's use of the UL 20 mark literally false.

Board-Tech relies on Burndy Corp. v. Teledyne Industries, Inc. for the proposition that advertising a product as UL compliant is false if that product does not in fact comply.  584 F. Supp. 656 (D. Conn. 1984), aff'd by

---

[1] Board-Tech makes the related argument that Eaton made representations of its products' compliance with the UL standards "separate and apart from" its use of the UL mark.  Appellant's Br. at 20.  But, as explained above, Eaton's representations of its products' compliance with "UL 20" mean only that UL verified the switches' performance along certain merits, a representation that is not "false on its face."  Time Warner, 497 F.3d at 153.

5

748 F.2d 767 (2d Cir. 1984).  If anything, Burndy militates in favor of dismissal.  In that case, the competitor's connectors were altered, and were found on retesting by UL to be non-compliant.  Id. at 660-61.  Once UL, as mark-owner, withdrew approval, the plaintiffs sued for false advertising.  The district court allowed the lawsuit to proceed on these specific facts because "[h]olding [a product] out to be UL approved" after materially changing it "constituted a false representation."  Id. at 662.  Board-Tech overreads Burndy.  Without any indication that UL decertified the defendant's product--or (perhaps) that the defendant's product had materially changed since certification--there would be no plausible allegation of a false statement.

Board-Tech protests that such a rule imposes an impossible pleading standard because discovery is needed to reveal the changes a manufacturer may have made to trigger non-compliance.  But nothing stops this plaintiff from inviting reconsideration or retesting by Underwriters Laboratories (as was done in Burndy).  In any event, it is axiomatic that a plaintiff must make a plausible allegation--here, of a false statement--to survive a motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007); see, e.g., Associated Press v. All Headline News Corp., 608 F. Supp. 2d 454, 463-64 (S.D.N.Y. 2009).  To merit discovery into its competitor's product lines and tradecraft, Board-Tech must "raise a reasonable expectation that discovery will reveal evidence" tending to show UL would find Eaton's products non-compliant.  Twombly, 550 U.S. at 556.  However, Board-Tech concedes that UL continues to endorse Eaton's use of its mark, and that there is no good faith basis to allege that UL's certification has become invalid by material changes in the challenged products.[2]  Board-Tech therefore fails to plead

---

[2] Board-Tech analogizes UL certification to FDA approval in Church & Dwight Co.  But the issue there was whether the FDA precludes any challenge to an advertisement's label, not whether the statement of FDA approval is literally false.  Church & Dwight Co., 843 F.3d at 64 ("[T]his dispute involves the question whether the application of a federal agency's regulation, promulgated under one federal statute, precludes a private action under another federal

any facts to support a plausible inference of literal falsity along the lines of Burndy.

### B. Likely to Mislead

The Complaint also fails to show that the use of the UL 20 mark, if literally true, is nonetheless likely to mislead consumers. Time Warner, 497 F.3d at 153; see Stokely-Van Camp, Inc. v. Coca-Cola Co., 646 F. Supp. 2d 510, 525 (S.D.N.Y. 2009). "[W]here the statement at issue is not literally false," a plaintiff alleging a Lanham Act violation "must demonstrate, by extrinsic evidence, that the challenged [content] tend[s] to mislead or confuse consumers, and must demonstrate that a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 112-13 (2d Cir. 2010) (citation and internal quotation marks omitted); see Time Warner, 497 F.3d at 153 ("[A] district court *must* rely on extrinsic evidence to support a finding of an implicitly false message." (alterations and citations omitted)). The Complaint offers no non-conclusory allegations or facts to support the claim that consumers have been misled or confused.

### II. Leave to Amend

Finally, Board-Tech challenges the refusal to grant leave for a further amendment of the Complaint. We review a district court's decision on leave to amend for abuse of discretion. See Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). Board-Tech never asked the

---

statute."). Board-Tech's claim fails because it fails to allege a false statement, not because it is precluded from challenging the content of its competitor's ads. Moreover, this Court rejected the argument that a fact about the pharmacological effects of a drug, which the FDA had determined to be true, could nonetheless be challenged as literally false. Apotex, 823 F.3d at 58, 64 (holding that advertising that "is consistent with the directive of the regulatory body having oversight of product labels" cannot be literally false); Church & Dwight Co., 843 F.3d at 73 n.13.

district court for leave to amend, and we have made clear that we will not deem it an abuse of the district court's discretion "to order a case closed when leave to amend has not been sought."  See Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 89 (2d Cir. 1999) (quotation marks and citation omitted); see also In re Am. Express Co. Shareholder Litig., 39 F.3d 395, 402 (2d Cir. 1994) (no abuse of discretion in denying leave to amend where "[a]ppellants amended their complaint twice before it was dismissed [and] did not seek leave to replead in the district court in their opposition papers to defendants' motion to dismiss").

For the foregoing reasons, and finding no merit in Board-Tech's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

8